UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEFFERY CARLTON EVANS,<br>    *Plaintiff*, | )<br>)<br>) | 3:25-CV-00729 (SVN) |
| v. | )<br>) | |
| CONNECTICUT GOVERNOR NED<br>LAMONT, et al,<br>    *Defendants*. | )<br>)<br>) | October 17, 2025 |

## INITIAL REVIEW ORDER

On May 5, 2025, p*ro se* Plaintiff Jeffrey Carlton Evans an individual[1] in the custody of the Connecticut Department of Correction ("DOC") at the commencement of this action, filed this civil rights action under 42 U.S.C. § 1983 alleging deliberate indifference to his medical needs in violation of his Eighth and Fourteenth Amendment rights. He names fifteen Defendants, including Connecticut Governor Ned Lamont, DOC Commissioner Angel Quiros, DOC Administrator Nick Rodriguez, Hartford Correctional Center ("HCC") Warden Devonia Long, Interim Correction Ombudsman ("ICO") Attorney Devaughn L. Ward, HCC Deputy Warden Foote, HCC Deputy Warden Dorn, Nurse Supervisor Tim, Licensed Practical Nurse ("LPN") Kellie Bowen, Nurse Gabby, Physician Assistant Hannah ("PA") Sullivan, and Does 1–4. Plaintiff seeks damages and injunctive relief.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental

---

[1] A review of the DOC offender information search website shows no current incarceration status for Plaintiff. The Court may take judicial notice of a state prison inmate locator *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[2] Based on this initial review, the Court orders as follows.

I.      **FACTUAL BACKGROUND**

The Court does not include herein all of the allegations from the complaint but summarizes only those facts necessary to provide context for initial review.

Plaintiff was arrested in July of 2024 for larceny and sentenced to ninety days in jail on March 28, 2025, in state criminal case number H12M-CR24-0296052-S.[3] Plaintiff was incarcerated at HCC beginning on or around July 10, 2024. Compl., ECF No. 1 ¶ 1. When Plaintiff

---

[2] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that includes only "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

[3] The Court takes judicial notice of the Criminal/Motor Vehicle Conviction Case Detail in order to fully address the procedural history of this case. *See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); *see also Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (courts may take "judicial notice of relevant matters of public record"). Plaintiff's arrest and sentencing dates are publicly available on the Connecticut Judicial website under Criminal/Motor Vehicle Convictions Case Detail and the case number. *See* Criminal/Motor Vehicle Convictions Cases Name Summary (last visited Oct. 17, 2025).

entered HCC, he asked Intake Nurse Doe 1[4] to add him to the list for an eye appointment because he lost his eyeglasses while traveling between the police station, the courthouse, and HCC. *Id.* ¶¶ 1–4. Intake Nurse Doe 1 advised Plaintiff that the eye doctor had retired. *Id.* ¶ 4.

Plaintiff sent an informal resolution request for a replacement pair of prescription eyeglasses, but he never received a written response. *Id.* Nurse Doe 2 verbally advised Plaintiff that DOC could not provide him with new eyeglasses "because there is no optometrist." *Id.* Plaintiff was also told that he could not pay for his prescription eyeglasses to be replaced with funds from his inmate account. *Id.*

"On numerous occasions," Plaintiff spoke to Deputy Warden Foote, Deputy Warden Doran, Warden Long, Medical Supervisor Tim, and Nurse Gabby in person as they did their weekly rounds at the facility. *Id.* ¶¶ 5–6. He also spoke with ICO Ward once. *Id.* During his conversations with these Defendants, Plaintiff requested his prescription eyeglasses, but nothing was done to provide him with the eyeglasses. *Id.* ¶¶ 5–7. Plaintiff also alleges he submitted a written grievance which "grievance coordinator Kelly [sic] has falsified" and in doing so "compromised the grievance process by deliberately stopping [Plaintiff's] efforts." *Id.* ¶ 7. Plaintiff's eyesight is blurred and is deteriorating. *Id.* ¶ 11. He experiences severe pain when he awakes from sleep and opens his eyes. *Id.* Plaintiff requires prescription eyeglasses and further alleges he needs an eye specialist examination due to his thyroid history, prior Lasik surgery, blurred vision, and severe eye pain. *Id.* ¶ 15.

On December 2, 2024, Plaintiff filed a Level 1 health services administrative remedy

---

[4] While Plaintiff references that Doe 1's title is "Chief Medical Officer" in his list of Defendants, *see* ECF No. 1 at 5, he refers to Doe 1 as an intake nurse in the body of his allegations, *see id.* ¶ 2. The Court thus treats Doe 1 as a nurse for purposes of this Order.

("HSAR"). Dec. 2024 HSAR, ECF No. 1-1 at 1–2. Plaintiff explained that he had—since July 2024—made several requests for his prescription eyeglasses to be replaced based on his "last eye examination" but medical staff "ke[pt] telling [him] there's no eye doctor." *Id.* at 1. Plaintiff stated he was "suffering because DOC doesn't have an eye doctor" and—although his thyroid condition was considered "normal (per the doctor)"—his eyesight was "getting worse" and he had previously undergone Lasik surgery; thus, he requested "a full eye examination." *Id.* In a response dated December 29, 2024, LPN Bowen rejected this HSAR for the stated reason that it did not meet "procedural requirements" by naming "a specific provider." *Id.* at 2. The HSAR was marked "appealable." *Id.*

Plaintiff filed a Level 2 HSAR appeal dated January 3, 2025, stating:

I need glasses and an eye examination. The provider was the eye doctor at MacDougall Correctional Institution. "Medical staff said he retired and there is no other provider for this District." The provider for my Lasik surgery was UCONN Hospital. The provider for my thyroid is Hannah Sullivan, (PA)[.]

Jan. 3, 2025, Level 2 HSAR, ECF No. 1-1 at 3. HSAR coordinator Bowen issued two notices of extensions to respond to his HSAR. *Id.* at 5–7. On February 3, 2025, she issued an extension, so that Plaintiff's "issue can have full consideration." *Id.* at 6. On February 17, 2025, she wrote that an "extension is being filed due to pending optometrist appt with new provider at MWCI. Appointment has been scheduled for 2/28/2025." *Id.* at 7. On March 6, 2025, she denied Plaintiff's HSAR, stating:

> You requested to see the eye doctor and have a complete eye exam. On 2/28/25 you were brought to MacDougall Walker to see the optometrist where an eye exam was performed and a new prescription for glasses to be made has been sent out.

*Id.* at 8. The rejection decision was marked as not subject to further appeal. *Id.*

Nonetheless, Plaintiff alleges he has neither had his prescription eyeglasses replaced, nor

4

been provided with a medical eye appointment. ECF No. 1 ¶¶ 11, 19. He has been advised that he is on the waiting list to see the eye doctor. *Id.* ¶ 11. But Plaintiff alleges he has been denied an appointment to see the eye doctor at UCONN Hospital. *Id.* Specifically, Plaintiff alleges LPN Bowen "has been deliberately stopping [Plaintiff's] efforts to seek adequate medical care." *Id.* ¶ 15.

Plaintiff alleges that he has experienced and continues to experience severe pain, headaches, and blurred vision and has been left without eyeglasses for more than seven months without an eye examination conducted by an eye specialist. *Id.* ¶¶ 15, 19. He claims that he is now facing severe eye damage and permanent health issues due to the failure to provide him medical attention for his complaints. *Id.* ¶¶ 14, 19.

## II.  DISCUSSION

"Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert,* 526 U.S. 286, 290 (1999) (citing 42 U.S.C. § 1983). Accordingly, a plaintiff must show a violation of a federally protected constitutional or statutory right which was the result of state action, or action "under color of law." *See Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir. 1994).

### A.  Official Capacity Claims

Plaintiff brings claims against Defendants in both their individual and official capacities. *See* ECF No. 1 ¶¶ 18–19. Because Plaintiff cannot sue an individual in his or her official capacity for monetary damages and because Plaintiff is no longer incarcerated, his requests for monetary and injunctive relief against Defendants in their official capacities are denied.

Plaintiff seeks compensatory, monetary, and punitive damages totaling $9 million dollars.

*Id.* at 7. Plaintiff further seeks injunctive orders (1) to provide him with an eye specialist appointment without delay; (2) to require Defendants to pay his litigation expenses; (3) to punish each Defendant "severely"; and (4) to remove LPN Bowen from her position as a DOC employee. *Id.* ¶ 20.

When a party sues a state official in his or her official capacity, "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief . . . and may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 677 (1974); *Ex parte Young*, 209 U.S. 123, 155–56 (1908). A plaintiff may proceed against defendants in their official capacities for injunctive relief only to the extent he alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123).[5]

First, Plaintiff may not proceed on claims for monetary damages against Defendants in their official capacities. Because Defendants are state actors, such claims are effectively suits against the state, and no exception to the state's Eleventh Amendment immunity applies here. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Plaintiff also cannot proceed on his claims for injunctive relief. While Plaintiff was incarcerated at the time he filed his complaint, a search of the DOC inmate locator website

---

[5] A defendant's personal involvement in the alleged constitutional violation is not a prerequisite to official capacity claims for injunctive relief. *See Hamilton v. Deputy Warden*, Nos. 15-cv-4031 (KBF), 15-cv-9458 (KBF), 2016 WL 6068196, at *13 (S.D.N.Y. Oct. 13, 2016). However, a claim for injunctive relief against a defendant in his or her official capacity may proceed only to the extent that the defendant has the authority to remedy the alleged ongoing constitutional violation. *See Scozzari v. Santiago*, No. 3:19-cv-002299 (JAM), 2019 WL 1921858, at *6 (D. Conn. Apr. 29, 2019).

indicates he no longer is incarcerated.[6]  An inmate's transfer from a prison facility generally moots claims for injunctive relief against officials of that facility.  *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006), *abrogated on other grounds as recognized by Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023).  Here, as Plaintiff is no longer in DOC custody, his injunctive relief claims against all Defendants are moot.

Therefore, to the extent any claims are brought against Defendants in their official capacity for damages and injunctive relief, such claims are dismissed.

B. Eighth and Fourteenth Amendment Claims

Plaintiff's status as either a convicted prisoner or a pretrial detainee dictates whether his claims of medial indifference are analyzed under the Eighth or Fourteenth Amendment.  *See Darnell v. Pineiro*, 849 F.3d 17, 29–35 (2d Cir. 2017); *Charles v. Orange Cnty*, 925 F.3d 73, 85 (2d Cir. 2019).  The Due Process Clause of the Fourteenth Amendment governs claims of deliberate indifference brought by pretrial detainees.  *Darnell*, 849 F.3d at 29; *Haslinger v. Westchester Cnty.*, No. 7:18-CV-05619 (PMH), 2020 WL 2061540, at *7 (S.D.N.Y. Apr. 29, 2020).  This is because pretrial detainees "have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." *Darnell*, 849 F.3d at 29 (internal quotation marks omitted).  Thus, claims alleging deliberate indifference to an inmate's health are analyzed under the Due Process Clause of the Fourteenth Amendment when brought by pretrial detainees, *see id.* at 29, but are analyzed under the cruel and unusual punishment clause of the Eighth Amendment when brought by a sentenced prisoner, *see Charles*, 925 F.3d at 85; *see*

---

[6] A review of the Connecticut judicial website shows that Plaintiff was most recently sentenced to 300 days in jail for use of a motor vehicle without permission on August 26, 2025, but that the verdict was marked as "Execution Suspended."  Criminal/Motor Vehicle Convictions Cases Name Summary, Case No. H14H-CR25-0771453-S (last visited October 17, 2025).

7

*also Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (explaining standards for medical indifference under Eighth and Fourteenth Amendments).

Publicly available information on the websites for the Connecticut Judiciary and DOC shows Plaintiff was a pretrial detainee from July 11, 2024, until his sentencing on March 28, 2025,[7] and was again a pretrial detainee after his admission to HCC on June 23, 2025, until his sentencing on August 26, 2025.[8]  Plaintiff is currently set for an arraignment hearing on November 10, 2025.[9]

Accordingly, Plaintiff's medical indifference claims arising during his status as a pretrial detainee between July of 2024 and March 28, 2025, fall under the Fourteenth Amendment, while any medical indifference claims arising after his sentencing on March 28, 2025, are governed by the Eighth Amendment.  Where the Court cannot discern whether Plaintiff's claim occurred while he was a pretrial detainee or sentenced inmate, the Court will permit a medical indifference claim to proceed under both the Fourteenth and Eighth Amendments for further development of the record.[10]

### 1. *Personal Involvement*

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (citations omitted)).  This is

---

[7] *See* Criminal/Motor Vehicle Convictions Cases Name Summary, Case No. H12M-CR24-0296052-S; ECF No. 1 ¶ 1.
[8] The execution of Plaintiff's August 26, 2025, sentence is marked suspended.  *See* Criminal/Motor Vehicle Convictions Cases Name Summary, Case No. H14H-CR25-0771453-S (last visited October 17, 2025).
[9] *See* Criminal / Motor Vehicle Pending Cases Name Summary, Case No. H15N-CR25-0355062-S (last visited October 17, 2025).
[10] Whether Plaintiff's claims fall properly under the Fourteenth or Eighth Amendment (or both, if they span his periods of time as both a pretrial detainee and a sentenced inmate) will be determined at a later juncture on a fuller record.

true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

Here, Plaintiff has not adequately pleaded the personal involvement of Defendants Lamont, Quiros, District Administrator Rodriguez, PA Sullivan, or Nurse Does 1, 3 and 4 in any alleged constitutional violation. Plaintiff claims that these Defendants were "aware of the given risk," and that he had not been provided with adequate medical care. ECF No. 1 ¶ 14. However, Plaintiff has not alleged facts concerning these Defendants' personal involvement in the alleged constitutional violation beyond this conclusory statement. While Plaintiff alleges that he "learned from Defendant Doe 1 that the eye doctor had retired," Plaintiff alleges no involvement of Defendant Doe 1 in the deprivation of his medical care beyond this informational remark. *Id.* ¶ 4. Further, while PA Sullivan is noted as the provider for Plaintiff's thyroid condition, his complaint contains no allegations that PA Sullivan was specifically requested to treat or notified of Plaintiff's medical condition. *See* ECF No. 1-1 at 3. Because Plaintiff has not alleged any facts to support these Defendants' personal involvement in the alleged constitutional violation, the Court dismisses Defendants Lamont, Quiros, District Administrator Rodriguez, PA Sullivan, and Nurse Does 1, 3 and 4 from the action for lack of personal involvement.

However, Plaintiff has sufficiently alleged facts as to the personal involvement of Defendants Warden Long, Deputy Warden Foote, Deputy Warden Dorn, ICO Ward, Medical Supervisor Tim, Nurse Gabby, LPN Bowen, and Nurse Doe 2, for purposes of initial review. Plaintiff alleges that he "on numerous occasions . . . talked to" Defendants Warden Long, Deputy Warden Foote, Deputy Warden Dorn, Medical Supervisor Tim, and Nurse Gabby, about his lack

9

of eyeglasses and medical care, and then talked with ICO Ward on one occasion during their weekly tour of the facility. ECF No. 1 ¶¶ 5–7. Plaintiff also alleges that Nurse Doe 2 told Plaintiff he could not get a replacement pair of glasses, even if he paid out of pocket, and violated the inmate request process by verbally rejecting Plaintiff's requests. *Id.* ¶¶ 4. Further, Plaintiff has alleged that Defendant Bowen "has been deliberately stopping [Plaintiff's] efforts to seek adequate medical care by falsifying documents and compromising the grievance process." *Id.* ¶ 15. As such, for purposes of initial review, Plaintiff has sufficiently demonstrated that these Defendants were involved through conversations with Plaintiff or through deliberate actions in the alleged constitutional violations. Accordingly, Plaintiff may proceed on individual capacity claims for monetary damages against Defendants Warden Long, Deputy Warden Foote, Deputy Warden Dorn, ICO Ward, Medical Supervisor Tim, Nurse Gabby, LPN Bowen, and Nurse Doe 2.

### 2. *Objective Prong*

A claim for deliberate indifference to serious medical needs has two components. The first component is objective and is evaluated the same under the Eighth and Fourteenth Amendments. *See Darnell*, 849 F.3d at 30. It requires a plaintiff to show that his purported medical need was "sufficiently serious." *Id.*; *see also Salahuddin*, 467 F.3d at 279 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Relevant to the objective element for Plaintiff's Fourteenth and Eighth Amendment claims, "[t]he serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles*, 925 F.3d at 86 (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)); *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).

For purposes of initial review, Plaintiff's allegations that he has been without glasses for

"over seven (7) months . . . in severe eye pain at times," and suffers from headaches and blurred vision, ECF No. 1 ¶ 18, suffice to suggest that he had a serious medical need for his prescription eyeglasses and an eye examination by an eye specialist. *See Dorlette v. Wu*, No. 3:16-cv-318 (VAB), 2017 WL 4558001, at *4 (D. Conn Oct. 12, 2017) (holding that allegations of headaches and deprivation of prescription eyeglasses in a motion to dismiss established a sufficiently serious injury.)

### 3. Subjective Prong

The Fourteenth and Eighth Amendments differ, however, with respect to the second element required to establish a deliberate indifference claim. Under the Eighth Amendment's "subjective" standard, the inmate must show "that the official acted with a culpable state of mind of 'subjective recklessness,' such that the official knew of and consciously disregarded 'an excessive risk to inmate health or safety.'" *Thomas v. Wolf*, 832 F. App'x 90, 92 (2d Cir. 2020) (citations omitted). By contrast, under the Fourteenth Amendment's "*mens rea*" analysis, a detainee "can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Darby*, 14 F.4th at 128 (quoting *Charles*, 925 F.3d at 87 (citation omitted)). Generally, under either analysis, negligence is not sufficient to state a deliberate indifference claim. *See Darnell*, 849 F.3d at 36.

### a)   **Nurse Doe 2**

First, Plaintiff alleges that after his entry to HCC in July 2024, Nurse Doe 2 responded to his inmate request for replacement prescription eyeglasses by advising him verbally that DOC

could not provide the replacement eyeglasses as there was no DOC staff optometrist and that he could not pay for replacement eyeglasses himself. ECF No. 1 at 4, 7. Although it appears from context that this conversation was early in Plaintiff's pretrial detainment, because Plaintiff does not specify when Nurse Doe 2 communicated with him, the Court considers both the Fourteenth and Eighth Amendment medical indifference standards.

Drawing all reasonable inferences in Plaintiff's favor, under a Fourteenth Amendment standard, Nurse Doe 2 should have been aware of a substantial risk to Plaintiff's safety as he attempted to go about daily activities without proper corrective eyewear. These allegations also support an inference that Nurse Doe 2 acted with a conscious disregard to Plaintiff's serious medical needs. Although a more developed record may show that Nurse Doe 2 committed mere negligence, the Court will allow Plaintiff to proceed on either a Fourteenth or Eighth Amendment claim against Nurse Doe 2.

### b) ICO Ward

Second, Plaintiff has sufficiently alleged an Eighth or Fourteenth Amendment claim against ICO Ward. Plaintiff alleges that he spoke to ICO Ward once in person but nothing was done about his request for eyeglasses. *Id.* ¶ 6. Plaintiff has not alleged any other facts about conduct by ICO Ward or his role within the prison community. Under Connecticut General Statutes § 18-81qq(a)(2)(C), the Correction Ombuds is responsible for, among other things, "[r]eceiving communications from persons in custody of the Commissioner of Correction regarding decisions, actions, omissions, policies, procedures, rules or regulations of the department." The Ombuds is also empowered to "[t]ak[e] all possible actions . . . in order to secure and ensure the rights of persons in the custody of the commissioner." *Id.* § 18-81qq(a)(2)(G).

12

Based on the statutory role of the Ombuds, the Court believes that it is reasonable to infer ICO Ward would have had the capacity to act in some fashion to assist him with getting the eyeglasses he claims to have needed. And because Plaintiff alleges that he told ICO Ward about the issue and ICO Ward failed to act, Plaintiff has adequately pleaded at least a potential Fourteenth Amendment deliberate indifference claim, if his conversation with ICO Ward occurred while he was a pretrial detainee. Without further details about the conversation—which Plaintiff alleges occurred only once—however, the Court cannot conclude that Plaintiff has adequately pleaded the recklessness standard required to mount an Eighth Amendment deliberate indifference claim, if the conversation took place after he was a sentenced inmate.

Thus, the Court will allow the deliberate indifference claim to proceed against ICO Ward for further development of the record. If the record reveals that the conversation between Plaintiff and ICO Ward took place after Plaintiff was sentenced, ICO Ward may move to dismiss the claim against him, as it would then be an inadequately pleaded Eighth Amendment deliberate indifference claim.

### c) Warden, Deputy Wardens, Medical Supervisor Tim, and Nurse Gabby

Third, Plaintiff alleges he spoke on a weekly basis to Deputy Warden Foote, Deputy Warden Doran, Warden Long, Medical Supervisor Tim, and Nurse Gabby about the alleged deprivation, but "nothing was done about his glasses." ECF No. 1 ¶¶ 5–6. Because Plaintiff has not alleged when these conversations occurred, the Court analyzes the claims against these Defendants under both the Fourteenth and Eighth Amendments. Drawing all reasonable inferences in favor of Plaintiff, his allegations suggest these Defendants took no remedial action in response

13

to Plaintiff's regular communication with them about his serious medical needs for his eyes. Thus, for purposes of initial review, the Court finds that Plaintiff has sufficiently alleged that Deputy Warden Foote, Deputy Warden Doran, Warden Long, Medical Supervisor Tim, and Nurse Gabby knew of or should have known that their conduct presented a serious risk of harm to his eyes under the Fourteenth Amendment, and/or that they consciously disregarded his serious medical needs for his eyes. Thus, at this early stage in the case, Plaintiff may proceed for damages on his Fourteenth and/or Eighth Amendment claims of indifference to his serious medical needs related to his eyes against Deputy Warden Foote, Deputy Warden Doran, Warden Long, Medical Supervisor Tim, and Nurse Gabby in their individual capacities.

### d)  LPN Bowen

Finally, Plaintiff alleges that LPN Bowen "has been deliberately stopping [Plaintiff's] efforts to seek adequate medical care by falsifying documents and compromising the grievance process." *Id.* ¶ 15. Plaintiff's allegations about LPN Bowen are sparse, but he has sufficiently alleged facts to support a Fourteenth Amendment and/or Eighth Amendment deliberate indifference claim against LPN Bowen.[11]

Here, Plaintiff has demonstrated that LPN Bowen was aware of his serious medical needs and specifically was aware that Plaintiff was "suffering" and that his eyesight was "getting worse" through his HSAR submission, which was ruled on by LPN Bowen. ECF No. 1-1 at 1–2. Further, LPN Bowen responded to a Level 3 HSAR from Plaintiff where he described his vision as "worse,"

---

[11] The date on Plaintiff's initial HSAR is December 2, 2024, and the date of Plaintiff's final included appeal is March 6, 2025. ECF No. 1-1 at 1, 8. However Plaintiff's complaint alleges that LPN Bowen "has been deliberately stopping" Plaintiff's efforts to seek medical treatment. Because Plaintiff's language suggests that LPN Bowen's actions continued into the present at the time of his complaint, and thus past the date of his sentencing, the claims against her are properly considered under both the Fourteenth Amendment and Eighth Amendment.

14

and was complaining of "bad headaches, blurred vision." *Id.* 5–6. As such, Plaintiff has sufficiently alleged that LPN Bowen was aware of, or should have been aware of, a substantial risk to his health as a result of a lack of corrective eyewear under the Fourteenth Amendment. Further, Plaintiff has alleged that LPN Bowen falsified records and derailed the administrative process in order to prevent him receiving adequate medical care. *See* ECF No. 1 ¶ 15. Taking Plaintiff's allegations as true, as the Court must at this stage, this sufficiently alleges a deliberate indifference to Plaintiff's medical needs under the Eighth Amendment.[12] Thus, Plaintiff may proceed on his Fourteenth and/or Eighth Amendment medical indifference claims against LPN Bowen in her individual capacity.

## III.   ORDERS

**Based on the foregoing, the Court issues the following orders:**

Plaintiff may proceed on his individual capacity claims for monetary damages based on:

(1) a Fourteenth Amendment and/or Eighth Amendment violation based on medical indifference against ICO Ward, Deputy Warden Foote, Deputy Warden Doran, Warden Long, Medical Supervisor Tim, Nurse Gabby, Nurse Doe 2, and LPN Bowen. Should an Eighth and/or a Fourteenth Amendment claim prove inappropriate given Plaintiff's incarceration status or otherwise upon further factual development of the record, Defendants may move to dismiss such claims at that time.

All other claims are DISMISSED. Defendants Governor Lamont, Commissioner Quiros, DOC Administrator Nick Rodriguez, Doe 1, PA Hannah Sullivan and Nurse Does 3 and 4 are all

---

[12] While LPN Bowen's response on March 6, 2025, indicates that Plaintiff was seen by an optometrist and "a new prescription for glasses to be made [was] sent out," drawing all reasonable inferences in favor of the Plaintiff, this statement merely indicates that Plaintiff had a new prescription written, not that he received a new pair of eyeglasses. ECF No. 1-1 at 8.

15

DISMISSED from this action. The Clerk shall remove these Defendants from the action.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1) If Plaintiff wishes to proceed immediately **only** on the claims set forth above against ICO Ward, Deputy Warden Foote, Deputy Warden Doran, Warden Long, Medical Supervisor Tim, Nurse Gabby, Nurse Doe 2, and LPN Kellie Bowen in their individual capacities, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket on or before **November 17, 2025**, informing the Court that he elects to proceed with service as to the claims set forth above in item one. After Plaintiff files his notice, the Court will begin the effort to serve process on ICO Ward, Deputy Warden Foote, Deputy Warden Doran, Warden Long, Medical Supervisor Tim, Nurse Gabby, Nurse Doe 2, and LPN Kellie Bowen.

(2) Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint by **November 17, 2025**. **An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any amended complaint.** The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file an amended complaint, the complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

The Court notes that Plaintiff's address on the docket is the address for Hartford Correctional Center. The Court will attempt to mail this Order to Plaintiff at the address on the docket but, as it appears Plaintiff is no longer incarcerated, the Order may not reach him. Under District of Connecticut Local Rule 83.1(d)(1), a self-represented party must provide an address

where service can be made upon such party. If this Initial Review Order is returned to the Court because Plaintiff is no longer at the address provided, the Court will dismiss this action, without prejudice to Plaintiff filing a motion to reopen it, along with a notice of change of address, by **December 16, 2025**.

                                   */s Sarala V. Nagala*
                                   SARALA V. NAGALA
                                   United States District Judge

It is so ordered this 17th day of October, 2025, at Hartford, Connecticut.